# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| HALL & ASSOCIATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-823 (TSC) |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This is a Freedom of Information Act case brought by Plaintiff Hall & Associates ("Hall") against the U.S. Environmental Protection Agency ("EPA"). Hall represents parties who oppose an EPA decision limiting nitrogen discharge into the Great Bay Estuary. Hall submitted numerous FOIA requests related to this decision, and challenges EPA's response to those requests. The parties have filed cross-motions for summary judgment. Based on the motions, the oppositions and the replies thereto, the entire record, and for the following reasons, EPA's motion is granted in part and denied in part, and Hall's motion is granted in part and denied in part.

## I.  BACKGROUND

Hall submitted FOIA requests on behalf of the Great Bay Municipal Coalition ("Coalition"). The Coalition's members are municipalities in New Hampshire that discharge into the Great Bay Estuary or its tributaries. The Coalition's underlying concern is EPA's decision to promulgate more stringent total nitrogen requirements for the Great Bay Estuary. That decision was made by EPA's Region I office ("Region I"), which administers the National

1

Pollutant Discharge Elimination System for New Hampshire. The Coalition believes that the decision to impose more stringent regulations is based on faulty science conducted by Region I. On May 4, 2012, Hall (on behalf of the Coalition) submitted a letter to the EPA Administrator alleging that Region I had engaged in science misconduct (the "May 4 Letter"). (Pl. Mot. Ex. 1). On September 27, 2012, the EPA responded, denying the allegations. (Compl. Ex. 2).

After receiving EPA's denial, Hall submitted nine FOIA requests to the EPA. Hall submitted its first FOIA request on October 4, 2012, seeking records relied upon by the EPA's Office of Water and the Interim Science Integrity Official to support EPA's assertion that Region I had not engaged in science misconduct (the "October 4 Request"). (Compl. Ex. 3). Hall then submitted seven additional FOIA requests on October 22, 2012; in each of these requests, Hall quoted a portion of the May 4 Letter and asked EPA to "[p]lease provide us with all records or factual analyses that show this statement is incorrect" (the "October 22 Requests"). (Compl. Exs. 5-11) (emphasis in original). In another letter dated October 22, 2012, Hall submitted a ninth and final FOIA request to EPA (the "Ninth Request"). (Compl. Ex. 19).

At the same time Hall was submitting FOIA requests to EPA, it was also submitting requests directly to Region I. EPA originally considered consolidating the requests, but Hall argued that "[t]he HQ foias were distinct from the regional requests. The documents are necessarily separate and not a combined response." (Nagle Decl. Ex. C). EPA responded that it "underst[ood] the distinction you're drawing between the HQ and Region 1 FOIAs. Our focus will be on the requests specifically directed to HQ. Nevertheless, since the two sets of FOIA requests both seek information about aspects of the same issue, we are coordinating with Region 1 to ensure that the Agency is applying a consistent approach to release of responsive documents." (*Id.*).

2

By letter dated November 30, 2012, EPA responded to all nine FOIA requests. (Compl. Ex. 21). EPA provided five responsive documents to the October 4 Request, and objected to the eight other requests because "they do not reasonably describe the records being sought, as required by 40 CFR 2.102(c), and improperly request that the Agency conduct analysis and research and formulate opinions. We note that similar requests were made of EPA Region 1 and were similarly objected to." (*Id.* at 1). EPA did not ask for clarification of the requests, and advised Hall of its right to appeal.

On December 20, 2012, Hall appealed EPA's decision that its eight requests did not reasonably describe the records sought. (Compl. Ex. 22). Hall explained: "The Coalition was not asking for the Agency to develop any further analysis or opinions. Rather, the Coalition sought all pre-existing records which contained analysis or opinions in conflict with the allegations at issue. In order for the Agency to claim that the Region had not engaged in science misconduct, EPA would have had to have conducted some type of analysis to determine whether the allegations made by the Coalition were true. It was those records that the Coalition was seeking." (*Id.* at 3).

In an interim response to Hall's appeal, EPA notified Hall that it would consolidate Hall's EPA and Region I appeals into a single appeal. (Compl. Ex. 24). Hall objected to the consolidation because "[d]ue to the significantly different nature of each of the Headquarters and Region 1 FOIA appeals, it would be improper for EPA to consolidate the appeals." (Compl. Ex. 25 at 2). Once again, EPA complied with Hall's request and processed the appeals separately.

By letter dated February 15, 2013, EPA issued its final determination regarding the nine requests. EPA denied Plaintiff's appeal of its determination regarding the October 22 Requests because they were "articulated in the form of an interrogatory-like question . . . Such a

formulation is not a proper FOIA request." (Compl. Ex. 26 at 2). EPA advised Hall that "[i]f you would like to clarify or modify those seven requests in a non-question form by providing specific information, such as a subject matter as to the records you are seeking, please re-submit this information to the EPA's FOIA office, who will either open new request(s) for you or re-open these request(s). See 40 C.F.R. 2.102(c)." (*Id.*).[1] Hall then filed the instant suit.

## II.   LEGAL STANDARD

### a. Motion for Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

---

[1] EPA referred the Ninth Request to Region I because it determined that Region I was more likely to have responsive documents. (Compl. Ex. 26 at 2). Hall alleged in its Complaint that it had not received a response from Region I, but has since acknowledged receiving a response regarding this request after filing suit.

In considering a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

    b. <u>FOIA</u>

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under clearly delineated statutory language." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. § 552(a), (b).

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. 5 U.S.C. § 552(a)(4)(B). In cases concerning the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g., ACLU v. U.S. Dep't of Def.*, 628

F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001).  An agency will be granted summary judgment on the adequacy of the search if it "show[s] beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).  "The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  Furthermore, the "adequacy of the search . . . is judged by a standard of reasonableness and depends, not surprisingly, on the facts of each case." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  Courts are mindful, however, that the "congressional intent tilt[s] the scale in favor of disclosure." *Morley*, 508 F.3d at 1114 (internal citation omitted).

To meet its burden, "the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith." *Weisberg v. U.S. Dep't of Justice*, 460 F.2d 1344, 1351 (D.C. Cir. 1983).  These declarations are "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).  Furthermore, an agency can show "reasonableness" in its affidavit by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom.*, *Sanders v. U.S. Dep't of Justice*, 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (citation omitted).

III.     ANALYSIS

The parties originally disputed numerous aspects of EPA's response to Hall's requests. The issues have now been narrowed to two: "whether EPA's search and production of documents was adequate for the October 4, 2012, FOIA request" and whether "EPA was justified in refusing to respond to the seven similarly-styled October 22, 2012, FOIA requests." (Pl. Reply 1). The Court will review these questions in turn.

   a.   Adequacy of the Search for the October 4 Request

Hall identifies two alleged deficiencies in EPA's search for the October 4 Request. First, Hall argues that EPA's response is facially deficient because it only provided "four documents" in response to the request.[2] (Pl. Mot. 17). Second, Hall argues that EPA's search was inadequate because Hall later received documents from Region I which should have been found in EPA's search for the October 4 Request.[3]

As EPA explains in a declaration by Deborah Nagle, Director of the Water Permits Division ("WPD"), upon receipt of the October 4 Request, Ross Brennan, Associate Chief of the WPD's State and Regional Branch, searched his e-mail to identify all EPA employees who had been involved in EPA's response to the May 4 Letter. (Nagle Decl. ¶ 14). Brennan also contacted "other potential custodians." (*Id.*). On October 16, 2012, Brennan e-mailed four WPD staff members the October 4 Request and asked each of them to provide "copies of documents and e-mail messages that are potentially responsive" and to identify other potential records custodians. (*Id.* ¶ 15). One of the four individuals that Brennan contacted was Michelle Schutz,

---

[2] EPA actually provided five documents, but Hall discounts the fifth document because it is a copy of its own May 4 Letter.

[3] First, Hall identifies four documents produced by Region I on November 30, 2012 that are allegedly responsive to the October 4 Request. (Pl. Mot. 17). Second, Hall argues that Region I's September 11, 2013 response to the Ninth Request (the post-complaint response) also included documents responsive to the October 4 Request. (*Id.* at 17-18).

7

who was the "staff lead" in the EPA's response to the May 4 Letter. Schutz identified six other individuals as the people she worked with on EPA's response. Brennan confirmed verbally and in writing that none of the four WPD staff he initially contacted had responsive records. (*Id.*).

Next, Brennan sent a copy of the October 4 Request to the six individuals identified by Schutz and another individual at Region I, and requested responsive documents from them. (*Id.* ¶ 16). Brennan contacted three additional individuals after a search through his own records indicated they may have been involved in EPA's response to the May 4 Letter. (*Id.* ¶ 17). Some of the relevant custodians provided Brennan responsive records. (*Id.* ¶ 19). Brennan sent additional e-mails and had verbal conversations to confirm that the remaining relevant custodians who had not provided responsive documents did not possess any. (*Id.* ¶ 20).

Nagle's declaration "describe[s] in . . . detail what records were searched, by whom, and through what process." *Steinberg*, 23 F.3d at 552 (citation omitted). Brennan made considerable efforts to identify every individual who may have been involved in responding to the May 4 Letter, and followed up with all of them to confirm whether or not they had responsive documents. He searched his own records multiple times to develop leads on where to search, and also received a second list of people to contact from Schutz. In short, it appears EPA asked every individual involved with the May 4 Letter to provide responsive documents, and "it is reasonable for an agency to limit its search to asking staff members familiar with all aspects of a government program to find the relevant documents." *Hall & Associates v. EPA*, 14 F. Supp. 3d 1, 7 (D.D.C. 2014). EPA therefore conducted "a search reasonably calculated to uncover all relevant documents." *Morley*, 508 F.3d at 1114 (citation omitted).

Hall's argument that EPA's response to the October 4 Request is facially deficient based solely on the small number of documents provided is unpersuasive. Under the FOIA, the Court

does not question "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg*, 23 F.3d at 551 (citation omitted); *see also SafeCard Servs., Inc.*, 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). "In fact, the D.C. Circuit has explicitly held that the case law in this Circuit does not support the contention that an agency's search was inadequate 'because it turned up only a few emails . . . even if the slim yield may be intuitively unlikely.' 'That the [FBI's] search turned up only a few emails . . . is not enough to render its search inadequate, even supposing that any reasonable observer would find this result unexpected.'" *Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*, 959 F. Supp. 2d 61, 71 (D.D.C. 2013) (citing *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 514 (D.C. Cir. 2011)). Hall may be skeptical that EPA's investigation into the May 4 Letter resulted in the production of only five documents, but mere skepticism is not enough to rebut the presumption of good faith or refute that the agency conducted an adequate search.

Hall also argues that because it received additional records in response to other FOIA requests—records which in Hall's view were also responsive to the October 4 Request—this indicates that EPA failed to conduct an adequate search. First, Hall describes four documents it received from Region I and alleges that Region I specifically stated that EPA had copies of the same documents. (Pl. Mot. 17). Second, Hall argues that the documents it received from Region I in response to the Ninth Request should have been produced in response to the October 4 Request. (*Id.*). According to Hall, because these documents were not produced for the October 4 Request, there is substantial doubt whether EPA conducted an adequate search for that request.

This argument is unavailing. As the D.C. Circuit has explained, "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate. Rather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search. After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted). Hall has not identified any information contained in the five documents produced in response to the October 4 Request that reference other potential sources of responsive records or prove that EPA should have found the Region I documents in its own files. *See Shurtleff v. EPA*, 991 F. Supp. 2d 1, 12 (D.D.C. 2013) ("The handful of records plaintiff identifies do not raise a genuine issue of material fact as to whether the EPA failed 'to follow through on obvious leads' in the retrieved records—*e.g.,* clear references to other relevant documents, files, or individuals which were not disclosed.") (citations omitted). The D.C. Circuit's analysis in *Iturralde* is equally applicable here:

> In certain circumstances, a court may place significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search. However, [plaintiff] fails to offer evidence of circumstances sufficient to overcome an adequate agency affidavit. [Plaintiff] does not maintain that the Department failed to search particular offices or files where the document might well have been found. Neither does he maintain that the Department failed or refused to interview government officials for whom there was strong evidence that they might have been helpful in finding the missing documents. Nor does he maintain that the Department ignored indications in documents found in its initial search that there were additional responsive documents elsewhere.

*Iturralde*, 315 F.3d at 316 (citations omitted). Hall's only argument is that because the Region I documents appear (in Hall's own estimation) to be responsive to the October 4 Request, they should have been found earlier, and therefore EPA's search was inadequate. This is not how a court is to evaluate the adequacy of an agency's search. Hall has presented no evidence to rebut

EPA's detailed declaration describing its search in response to the October 4 Request, and the Court therefore finds that the EPA conducted an adequate search.[4]

b. EPA's Refusal to Process the October 22 Requests

The parties also dispute EPA's response to the October 22 Requests. EPA refused to search for records responsive to those requests because the requests did not "reasonably describe the records being sought." (Compl. Ex. 21). Hall argues that the requests were clearly articulated and described what records it requested, and that Region I was able to understand and respond to similar requests, meaning EPA failed to comply with the FOIA by not similarly processing the requests. EPA argues that the October 22 Requests were not properly formulated FOIA requests and Hall failed to modify or clarify the scope of the requests, as it did with the Region I requests, therefore EPA was not required to respond. (Def. Mot. 16).

A FOIA request must "reasonably describe" the records requested. 5 U.S.C. § 552(a)(3)(A). A request must enable "a professional agency employee familiar with the subject area to locate the record with a reasonable amount of effort." *Judicial Watch, Inc. v. Export–Import Bank,* 108 F. Supp. 2d 19, 27 (D.D.C. 2000). The government must use "some semblance of common sense" in interpreting FOIA requests, *Dale v. IRS,* 238 F. Supp. 2d 99, 105 (D.D.C. 2002), and "an agency also has a duty to construe a FOIA request liberally." *Nation

---

[4] It also bears repeating that the later revealed documents came from Region I—not EPA. Hall repeatedly told EPA that it was not looking for records in Region I's possession in response to its EPA requests. *See* Nagle Decl. Ex. C ("The HQ foias were distinct from the regional requests. The documents are necessarily separate and not a combined response."). Not only is there "no requirement that an agency search every division or field office in response to a FOIA request, especially where the requester has indicated specific areas where responsive documents might be located," *Marrera v. U.S. Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985), but "it is well established that the existence of records maintained by another agency is not dispositive of either the issue of the adequacy of an agency's search or the question of its good faith." *Love v. U.S. Dep't of Homeland Sec.*, 960 F. Supp. 2d 254, 262-63 (D.D.C. 2013). Even if both agencies at some point possess a record, it may not be found in one agency's search given that "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde*, 315 F.3d at 315. It is not clear whether Region I should be considered "another agency" for purposes of the FOIA requests here, but in any event, this further weakens Hall's argument that the documents it received from Region I prove EPA conducted an inadequate search.

11

*Magazine, Washington Bureau v. U.S. Customs Service,* 71 F.3d 885, 890 (D.C. Cir. 1995). However, "[t]he linchpin inquiry" when determining whether a request reasonably describes records is "whether the agency is able to determine precisely what records (are) being requested." *Yeager v. DEA,* 678 F.2d 315, 326 (D.C. Cir. 1982) (internal quotation marks and citations omitted). The agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents," *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996), and ultimately "it is the requester's responsibility to frame requests with sufficient particularity." *Judicial Watch,* 108 F. Supp. 2d at 27 (citation omitted). EPA's FOIA regulations further explain the requirements for a proper FOIA request:

> Your request should reasonably describe the records you are seeking in a way that will permit EPA employees to identify and locate them. Whenever possible, your request should include specific information about each record sought, such as the date, title or name, author, recipient, and subject matter. If known, you should include any file designations or descriptions for the records that you want. The more specific you are about the records or type of records that you want, the more likely EPA will be able to identify and locate records responsive to your request.

40 C.F.R. § 2.102(c).

Hall's October 22 Requests, as originally formulated, were not proper requests. Hall submitted seven similar requests. Each of the requests quoted a statement from the May 4 Letter accusing Region I of science misconduct, and asked EPA to provide all documents proving that statement wrong. For example, one request read:

**Request:**

As part of the Coalition's submissions to EPA, the following statement was provided:

> *This peer review occurred without considerations of EPA's 2009 Science Advisory Board peer review, which concluded the type of "stressor-response" analysis used to generate the stringent TN criteria was not "scientifically defensible," did not demonstrate "cause and effect," and could misallocate local resources.*

> Please provide us with all records or factual analyses that show this <u>statement is incorrect</u>.

(Compl. Ex. 9 at 2) (emphasis in original). EPA refused to process the October 22 Requests because they did "not reasonably describe the records being sought . . . and improperly request that the Agency conduct analysis and research and formulate opinions." (Compl. Ex. 21).

Where a FOIA request is unclear, "an agency processing a FOIA request is not required to divine a requester's intent." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003); *see also Hudgins v. IRS,* 620 F. Supp. 19, 21 (D.D.C. 1985) (Hogan, J.) ("[A]n agency is not required to have 'clairvoyant capabilities' to discover the requester's need."). FOIA also does not require an agency to create documents or opinions in response to a request. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 161–62 (1975); *Bureau of Nat'l Affairs v. U.S. Dep't of Justice,* 742 F.2d 1484, 1490 (D.C. Cir. 1984). And an agency is not required to "answer questions disguised as a FOIA request," *Hudgins,* 620 F. Supp. at 21, nor conduct research in response to a FOIA request. *See Allnutt v. U.S. Dep't of Justice,* Nos. Y–98–901, Y–98–1722, 2000 WL 852455, at *12 (D. Md. Oct. 23, 2000); *see also DiViaio v. Kelley*, 571 F.2d 538, 542-43 (10th Cir. 1978) ("it is clear that nothing in the Act requires 'answers to interrogatories' but rather and only disclosure of documentary matters which are not exempt").

At best, the October 22 Requests as originally written could be construed as questions or interrogatory-like requests, asking EPA to agree or disagree with the various contentions of the Coalition under the guise of a FOIA request. At worst, the requests were designed as a trap: either EPA produced or created documents disproving the Coalition's accusations, or the Coalition would assume based on the lack of response that EPA could not disprove them. While the requests nominally requested documents, EPA properly construed them as not adequately

describing the records sought, and EPA thus had no obligation to process the October 22 Requests as originally worded.

This is not the end of the inquiry, however. Under EPA's own regulations, "[i]f EPA determines that your request does not reasonably describe the records, it will tell you either what additional information you need to provide or why your request is otherwise insufficient. EPA will also give you an opportunity to discuss and modify your request to meet the requirements of this section." 40 C.F.R. § 2.102(c). EPA's initial denial of the October 22 Requests cited section 2.102(c), but only as support for the denial. EPA did not tell Hall what additional information it needed to provide, and did not give Hall "an opportunity to discuss and modify" the requests, instead only notifying Hall of its right to appeal. EPA has not adequately explained why it failed to engage in the required collaborative process to allow Hall to modify the October 22 Requests. *See Parker v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*, 852 F. Supp. 2d 1, 14 (D.D.C. 2012) ("DOJ's own FOIA regulations prevent it from denying a request simply because it [is] unclear. Instead, DOJ must inform the requester why the request was unclear and allow the requester to modify their request. DOJ did not comply with this regulation here. DOJ must locate any responsive records to this sixth category of documents and either disclose them or claim an exemption.") (citation omitted); *Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 10 (2d Cir. 1995) (Tax Division had duty to assist plaintiffs in reformulating their request and could not "'resist disclosure because the request fails "reasonably [to] describe" records unless it has first made a good faith attempt to assist the requester in satisfying that requirement.'") (citing *Ferri v. Bell,* 645 F.2d 1213, 1221 (3d Cir. 1981), *modified on other grounds*, 671 F.2d 769 (3d Cir. 1982)); *Halpern v. FBI*, 181 F.3d 279, 289 (2d Cir. 1999).

Despite EPA's failure in its denial letter to advise Hall of its right to modify the requests, EPA argues the burden should be shifted to Hall for "offer[ing] no explanation why it did not clarify the scope" of the October 22 Requests. (Def. Reply 6). But the record reflects that Hall <u>did</u> attempt to modify its requests to more specifically identify the records it sought. In its appeal of EPA's initial denial, Hall explained that "[t]he Coalition was not asking for the Agency to develop any further analysis or opinions. Rather, the Coalition sought all pre-existing records which contained analysis or opinions in conflict with the allegations at issue. In order for the Agency to claim that the Region had not engaged in science misconduct, EPA would have had to have conducted some type of analysis to determine whether the allegations made by the Coalition were true. It was those records that the Coalition was seeking." (Compl. Ex. 22 at 3). For reasons the EPA has not explained, it ignored in its final response (and ignores now) this reformulation of the October 22 Requests. EPA simply reiterated its prior position and nowhere acknowledged Hall's explanation of the requests or considered whether the requests had been modified. In addition, it was only in the response to Hall's appeal, which EPA specifically identified as its "final determination," that EPA raised for the first time that Hall could clarify or modify the requests. (Compl. Ex. 26).

EPA's response is especially perplexing given how Region I responded to similarly worded requests. Like the October 22 Requests, Hall submitted 18 Region I requests containing various statements and a request for "all analyses of information from the Great Bay Estuary that shows this statement is incorrect." (Hall v. EPA, No. 13-830 (D.D.C.), ECF No. 1-1 at Exs. 1-18).[5] And like EPA's initial denial of the October 22 Requests, Region I denied these 18

---

[5] The Court takes judicial notice of exhibits in the public record of Hall v. EPA, No. 13-830 (D.D.C.), a case in which Hall challenged Region I's response to its requests. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (courts have authority to judicially notice related proceedings in other courts).

requests as not reasonably describing the records sought. (*Id.* at Ex. 37). Unlike EPA's denial, however, Region I also explained that "[i]n accordance with our regulations, we offer you the opportunity to discuss and modify your requests to meet the requirements of the regulations," and gave Hall a contact person to discuss modifications. (*Id.*). Hall provided a substantially similar response to Region I's denial as it had to EPA: "During EPA Headquarters' investigation into the science misconduct allegations submitted by the Coalition, the Region would have had to submit records showing that the specific allegations made by the Coalition were incorrect . . . We are simply asking for the specific documents that Region I may have already gathered and sent to EPA Headquarters during EPA Headquarters' investigation into the Coalition's allegations of science misconduct on specific issues identified in each of the individual FOIA requests." (*Id.* at Ex. 38). Rather than ignore this explanation, as EPA apparently did, a Region I FOIA officer e-mailed Hall and advised that based on its modification, Region I could now process the 18 FOIA requests. (*Id.* at Ex. 39). Region I reiterated its position in a subsequent response, explaining that because Hall "explained that you were in fact seeking documents that the Region may have 'already gathered and sent to Headquarters' refuting your specific scientific allegations . . . the Region notified you that your subsequent clarification was sufficient to allow the Region to proceed with its search for any documents that might be responsive to your request." (*Id.* at Ex. 40).

In another set of requests to Region I, Hall requested "any and all records that demonstrate that the following technical conclusions, with respect to the Great Bay, are erroneous." (Pl. Mot. Ex. 6). This time, Region I did not even ask for modification; it responded to the requests as originally worded. (*Id.*).

16

The parties do not directly address the relationship between EPA and Region I for FOIA purposes, and whether a response from one necessitates the same response from the other, so the Court does not find Region I's responses dispositive.[6]  However, EPA has failed to proffer any explanation why it failed to follow its own regulations, or why it treated the October 22 Requests differently from how Region I treated similarly worded requests.  EPA specifically told Hall that "since the two sets of FOIA requests both seek information about aspects of the same issue, we are coordinating with Region 1 to ensure that the Agency is applying a consistent approach to the release of responsive documents."  (Nagle Decl. Ex. C).  But EPA did no such thing—it failed to offer Hall the chance to modify the October 22 Requests even after Region I had done so in response to similar requests, and it ignored Hall's modification and refused to process the October 22 Requests even after Region I had processed two similar sets of requests.  This is strong evidence that EPA violated FOIA—and failed to follow its own FOIA regulations—by not considering a proposed modification intended to narrow the requests to reasonably describe the records sought.  EPA has not provided an adequate basis for the Court to conclude otherwise.  EPA is therefore ordered to process the October 22 Requests as modified by Hall's December 20, 2012 letter (Compl. Ex. 22) and either disclose any responsive records or claim an exemption.  If EPA believes the requests as amended are still not sufficiently clear, it must allow Hall to further clarify or modify the requests in accordance with 40 C.F.R. § 2.102(c).

### IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part.  Plaintiff's cross-motion for summary judgment is also granted in part and

---

[6] *See, e.g., Pinson v. U.S. Dep't of Justice*, No. 12-1872, 2014 WL 4825255, at *7-8 (D.D.C. Sept. 30, 2014) (finding it irrational that an agency was able to construe the meaning of one request but not another similarly worded request from the same submitter).

denied in part. The Court finds that EPA conducted an adequate search for the October 4 Request, but that it improperly failed to respond to the October 22 Requests and must process those requests, as modified by Hall's December 20 letter, in accordance with EPA's FOIA regulations and in cooperation with Hall.

Date: March 16, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge